CARLO, DEMANDANTE Y APELADO *v.* FERRER ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Mayagüez, en pleito sobre nulidad de inscripción, declaración de título y nuevo juicio.

No. 1710.—Resuelto en marzo 18, 1919.

DEMANDA—ESPECIFICACIÓN Y ELIMINACIÓN DE PÁRRAFOS DE LA MISMA.—Cuando como en el presente caso, se alega en la demanda que al demandante co-

rresponde en propiedad por título hereditario la finca rústica de siete cuerdas que en ella se describe, es suficiente que el demandante alegue, para demostrar la propiedad, que de las siete cuerdas había adquirido su causante dos cuerdas por herencia materna, cuatro por título de compra y una por herencia paterna.

ID.—EXCEPCIONES PREVIAS—PARTES NECESARIAS—MULTIPLICIDAD DE ACCIONES.—Son partes necesarias en una acción todas aquellas que tienen un interés en el objeto que pueda ser afectado por la sentencia, regla que se funda en el precepto que atiende a impedir subsecuentes litigios y multiplicidad de acciones con la determinación de todos los derechos de todas las partes que puedan o deban ser afectadas por una sentencia.

ID.—ACUMULACIÓN DE ACCIONES.—Cuando varias acciones están íntimamente relacionadas entre sí por derivarse unas de otras, no hay objeción en sostener la acumulación de las mismas.

ID.—CAUSAS DE ACCIÓN—TIEMPO DE EXPONERLAS.—El derecho de una parte demandada a exigir que las causas de acción se expongan separadamente debe ejercitarse antes de contestar la demanda, pues de no hacerlo así el demandado se somete al juicio en los términos en que ha sido preparada la demanda.

ENMIENDA A LA DEMANDA—RECONSIDERACIÓN DE ORDEN MOTU PROPIO.—No comete error la corte inferior al dictar una orden dejando sin efecto una resolución dictada anteriormente ordenando al demandante enmendar su demanda, por estar facultada para ello de acuerdo con el apartado tercero, artículo 3 del Código de Enjuiciamiento Civil.

SUSPENSIÓN DEL JUICIO—INDEFENSIÓN.—Un demandado que no solicita la suspensión del juicio antes de proponer su prueba, no obstante la conformidad expresamente manifestada por la corte de suspenderlo para otro día después de practicada la prueba del demandante con el fin de dar amplia oportunidad al demandado para preparar su defensa, ni solicita dicha suspensión después de terminada la práctica de sus pruebas, no puede alegar indefensión.

ALEGACIONES DE LA DEMANDA—ADMISIÓN DE PRUEBA SECUNDARIA.—No habiéndose alegado en la demanda que se había otorgado documento de partición de los bienes relictos, sino que se partieron y dividieron entre los herederos los bienes dejados, bajo tal alegación era admisible la prueba tendente a comprobar la partición y división de los bienes relictos, aunque esas operaciones no constaran en documento público o privado.

PRUEBAS—ADMISIÓN DE TESTAMENTO—ALEGACIÓN FRÍVOLA.—Derivándose de un testamento el derecho que alega tener el demandante a los bienes que reclama dejados por su esposa, es frívola la alegación de no ser admisible como prueba dicho testamento.

ID.—ADMISIÓN DE PRUEBA—EXCEPCIONES.—El hecho de que se admita como prueba una certificación sobre pago de contribuciones que no guarda relación alguna con la finca descrita en la demanda no da lugar, por sí sólo, a la revocación de la sentencia, a menos que se demuestre que causó perjuicios a los demandados.

ID.—ADMISIÓN DE DOCUMENTOS PRIVADOS—EXCEPCIÓN—PERJUICIO DE TERCERO.—No existe en el Código Civil precepto alguno que por modo exclusivo exija que un documento privado sea suscrito ante notario por el que lo otorga y por quien lo acepta para que pueda perjudicar a tercero.

II.—TERCEROS—CONOCIMIENTO PREVIO DE LA ILEGALIDAD DEL TÍTULO DEL VENDE-
DOR.—No tiene el carácter de tercero el que compra en subasta pública una
finca teniendo previo conocimiento de que tal finca pertenece a persona dis-
tinta de aquella a cuyo nombre se hace la venta judicial.

NUEVO JUICIO.—En este caso se pidió nuevo juicio por los demandados, alegán-
dose, entre otros motivos, no haberse ordenado la suspensión del juicio,
lo cual dió lugar a que por no estar presente su principal testigo cuando
declaraban los del demandante, se vieron privados de repreguntar a éstos
sobre hechos cuyo mejor conocimiento tenía el testigo ausente. *Se resolvió:*
que los demandados estaban en el deber de aclarar qué hechos adicionales
pudieron haber producido en prueba por vía de repreguntas o qué impug-
nación hubieran hecho a la credibilidad de los testigos del demandante cuya
omisión no permite conocer cuál fué el perjuicio sufrido por los demanda-
dos si alguno sufrieron.

ENMIENDAS A LAS ALEGACIONES—DISCRECIÓN JUDICIAL—ARTÍCULOS 136, 137 Y
140 DEL CÓDIGO DE ENJUICIAMIENTO CIVIL.—La facultad de las cortes para
permitir enmiendas a las alegaciones de acuerdo con los artículos 136, 137 y
140 del Código de Enjuiciamiento Civil, es de carácter discrecional y mien-
tras no se demuestre abuso de discreción, la presunción es que la discreción
fué sanamente ejercitada.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Angel A. Vázquez.*

Abogado del apelado: *Sr. José Benet.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del
tribunal.

En 9 de mayo de 1916 el demandante José Federico Carlo
Zapata radicó demanda enmendada en la Corte de Distrito
de Mayagüez, siendo sus alegaciones las siguientes:

*Primera.*—Que José María Ferrer y Pagán era dueño en
propiedad de un predio de terreno nombrado El Barro con
cabida de 13 cuerdas y casa terrera, de maderas y tejas de
barro, y cocina de madera y tejas, radicada en el barrio de
Llanos del término municipal de Cabo Rojo bajo las colin-
dancias que se describen, cuyo predio de terreno adquirió
José María Ferrer y Pagán por compra a su padre Lázaro
Ferrer durante el matrimonio con su legítima esposa María
de los Angeles Pabón e Irizarry.

*Segunda.*—Que el día 27 de agosto del año 1899 falleció
en Cabo Rojo, María de los Angeles Pabón e Irizarry, par-
tiéndose y dividiéndose entre sus herederos los bienes que
dejara, entre ellos la parte que le pertenecía en la finca de

13 cuerdas, de la cual se adjudicaron dos a la esposa del demandante María de los Angeles Ferrer y Pabón.

*Tercera.*—Que en 6 de diciembre del año 1900 María de los Angeles Ferrer y Pabón hubo por compra a su legítimo padre José María Ferrer y Pagán cuatro cuerdas de terreno segregadas de la finca denominada "El Barro", las que en unión de más tierras habían sido adjudicadas por los herederos a José María Ferrer y Pagán al fallecimiento de su esposa María de los Angeles Pabón.

*Cuarta.*—Que María de los Angeles Ferrer y Pabón agregó las dos cuerdas que heredó de su madre y las cuatro cuerdas que compró a su padre, formando así una sola finca de seis cuerdas, que también se describe.

*Quinta.*—Que José María Ferrer y Pagán falleció en Cabo Rojo el día 8 de noviembre de 1903 sin otorgar testamento, dejando a su fallecimiento varios bienes radicados en dicho pueblo; y habiéndose procedido por los herederos de común acuerdo a la partición y división de ellos fué adjudicada a María de los Angeles Ferrer y Pabón una cuerda de tierra segregada de la mencionada finca El Barro, viniendo así a ser dueña de una parcela de 7 cuerdas de terreno que se describe así:

"Rústica de seis cuerdas radicada en el barrio Llanos Tuna del municipio de Cabo Rojo, colindando al norte con tierras de Amparo Rivera, antes Gerónimo Ramírez; por el sur con tierras de don José María Ferrer y Pagán y el camino real que conduce a Cabo Rojo y Boquerón que divide los barrios de Llanos Tuna y Llanos Costas; por el este con don José María Padilla, antes José María Ferrer, y por el oeste con don José María Ferrer y Pagán."

*Sexta.*—Que María de los Angeles Ferrer y Pabón falleció bajo testamento otorgado en 15 de agosto de 1910 por el cual instituyó único y universal heredero de todos sus bienes al demandante, su legítimo esposo José Federico Carlo Zapata, quien vino a ser dueño de la finca de 7 cuerdas que ha poseído pública, quieta y pacíficamente, sin interrupción alguna, desde el fallecimiento de su esposo, como ésta la ha-

bía poseído anteriormente en las mismas condiciones desde las fechas de sus respectivos títulos de adquisición.

*Séptima.*—Que en 14 de octubre de 1910 José Ubaldino, Rosa María, Fernando del Carmen, José Antonio y Luis Ferrer y Pabón, en calidad de hijos y herederos de su padre José María Ferrer y Pagán, y además Ramón María y Amparo Rivera y Ferrer y Benjamín e Indalecio Carlo y Ferrer, en su calidad de nietos de José María Ferrer y Pagán, por conducto del abogado Licenciado Carlos del Toro Fernández, interpusieron demanda ante la Corte de Distrito de Mayagüez contra el demandante José Federico Carlo Zapata pidiendo la nulidad del testamento de María de los Angeles Ferrer y Pabón, en el que instituía por heredero al demandante, y tramitado el caso bajo el No. 2957 la referida corte de distrito por orden de 21 de enero de 1911 tuvo a los demandantes por desistidos de la continuación del pleito y ordenó que se dictara, como se dictó posteriormente, una sentencia de conformidad.

*Octava.*—Que a principios del mes de marzo de 1911, José María Ferrer y Pabón por conducto del abogado Angel A. Vázquez promovió ante la misma corte de distrito de Mayagüez expediente sobre declaratoria de herederos de los consortes José María Ferrer y Pagán y María de los Angeles Pabón e Irizarry, y dicha corte por orden de 24 de marzo de 1911 declaró únicos y universales herederos de dichos esposos a sus siete hijos nombrados José Ubaldino, José Antonio, José María, Fernando del Carmen, Rosa María, Luis y María de los Angeles Ferrer y Pabón, a sus cuatro nietos Indalecio, Julio Benjamín, Lisandro y Arsenio Carlo y Ferrer, y a sus también nietos Ramón María y Amparo Rivera y Ferrer; y entonces José Ubaldino y José María Ferrer y Pabón, aprovechándose de tener en su poder una escritura pública demostrativa del título de propiedad de la finca de 13 cuerdas nombrada "El Barro" a favor de José María Ferrer y Pagán, y constándoles que siete cuerdas de esa finca pertenecían al demandante, maliciosamente y con objeto de

privar a éste de la propiedad y posesión de dicha finca, defraudarle en sus derechos, y con ánimo perverso, comparecieron en 16 de mayo de 1911 en el Registro de la Propiedad de San Germán e hicieron inscribir la finca de 13 cuerdas en común proindiviso a título de herencia a nombre de los demandados.

*Novena.*—Que José Ubaldino Ferrer y Pabón falleció en Cabo Rojo en el año de 1913, dejando a su fallecimiento 8 hijos legítimos nombrados Primitivo, Amelia, María Jesús, Narciso, Juana, Concepción, Ubaldino y Josefa Ferrer y Toro a los que correspondían los derechos hereditarios de su difunto padre, siendo por tanto demandados en este pleito juntamente con todos los demás herederos anteriormente relacionados.

*Décima.*—Que tanto el demandante como su causahabiente María de los Angeles Ferrer y Pabón en diferentes ocasiones han requerido a los herederos de José María Ferrer y Pagán y María de los Angeles Pabón e Irizarry a fin de que les otorguen la debida documentación y declaración de sus títulos sin haber podido conseguirlo.

*Undécima.*—Que en pleito No. 1950 seguido por Angel A. Vázquez ante la Corte Municipal de Mayagüez contra los herederos de los cónyuges José María Ferrer y Pagán y María de los Angeles Pabón e Irizarry en reclamación de los honorarios obtuvo aquél una sentencia en rebeldía contra los demandados José Antonio, José María, Fernando del Carmen, Rosa María y Luis Ferrer y Pabón y además contra los también demandados Indalecio, Julio Benjamín, Lisandro y Arsenio Carlo y Ferrer y contra Ramón María y Amparo Rivera y Ferrer por la suma de $500 y para satisfacer dicha sentencia el marshal de la Corte Municipal de Mayagüez por designación expresa de Angel A. Vázquez con fecha 20 de diciembre de 1915 embargó e hizo embargar todo el derecho, título e interés de los demandados rebeldes en la finca de 7 cuerdas, la que fué vendida en pública subasta a Angel A. Vázquez por la suma de $100 en adjudicación de parte de

su crédito, otorgándosele por el marshal escritura de venta en 26 de marzo de 1916, en cuya escritura el mismo Angel A. Vázquez traspasó la misma finca en venta al otro demandado Luis Ferrer y Pabón por la suma nominal de $250.

*Duodécima.*—Que tanto Angel A. Vázquez como Luis Ferrer y Pabón conocían al tiempo de verificarse los procedimientos anteriormente relacionados y con anterioridad a su fecha, que la finca de 7 cuerdas pertenecía en propiedad al demandante José Federico Carlo Zapata y tenían también conocimiento de que se había interpuesto la presente acción de aclaración de título y cancelación, habiéndose puesto de acuerdo, deliberadamente y con intención de perjudicar al demandante, para que Angel A. Vázquez pudiera obtener una sentencia en rebeldía, embargase especialmente la finca de 7 cuerdas y se adjudicara la misma en perjuicio de los derechos del demandante José Federico Carlo y Zapata.

La demanda concluye con la súplica de que por sentencia se declare que la finca de siete cuerdas descrita en la demanda, que formaba parte de la de 13 cuerdas denominada "El Barro," también descrita, pertenece en propiedad al demandante por título de compra y además por prescripción, se decrete la cancelación del título de dicha finca de 13 cuerdas inscrito proindiviso en el registro a favor de los demandados en cuanto a las siete cuerdas que el demandante reclama como suyas; se ordene la inscripción de esa parcela de siete cuerdas a nombre del demandante; se decrete la nulidad de la escritura otorgada por el márshal de la Corte Municipal de Mayagüez a favor de Angel A. Vázquez y por éste a favor de Luis Ferrer; y se condene a los demandados que se opusieren a la demanda al pago de las costas, desembolsos y honorarios de abogado.

Después de haber presentado los demandados José Antonio, José María y Luis Ferrer y Angel A. Vázquez moción pretendiendo ciertas especificaciones y eliminaciones que fueron declaradas sin lugar por orden de 17 de agosto de 1916 y después de haber formulado el demandado Angel A. Váz-

quez excepciones previas a la demanda que también fueron
desestimadas, tanto los demandados José Antonio, José Ma-
ría y Luis Ferrer como Angel A. Vázquez formularon con-
testación por separado a la demanda, admitiendo unos he-
chos, negando otros y aduciendo materia nueva y defensas
especiales.

Celebrado el juicio en el que ambas partes propusieron
pruebas, la corte dictó sentencia en 22 de enero de 1917 por
la que declara con lugar la demanda en todas sus partes y
en su consecuencia decreta y ordena que la finca de 7 cuer-
das descrita en la demanda que forma parte de la otra finca
de 13 cuerdas denominada "El Barro" también descrita en
la demanda, pertenece en propiedad y dominio al demandante
José Federico Carlo Zapata por título de compra y herencia;
decreta, además, la cancelación del título de dicha finca nom-
brada "El Barro" inscrita proindiviso a título de herencia
intestada a favor de los demandados en cuanto afecta la ins-
cripción a las 7 cuerdas pertenecientes al demandante; or-
dena la inscripción de esa porción de 7 cuerdas a nombre
del demandante y decreta además la nulidad de la escritura
otorgada por el márshal de la Corte Municipal de Cabo Ro-
jo a favor de Angel A. Vázquez, y por éste a favor de Luis
Ferrer, ante el notario Miguel del Toro Colberg en 16 de
marzo de 1916, con imposición de costas, desembolsos y ho-
norarios de abogado a los demandados opositores.

Los demandados José Antonio, José María y Luis Ferrer
y Angel A. Vázquez solicitaron la celebración de nuevo jui-
cio y tal pretensión fué declarada sin lugar por orden de
31 de enero de 1917.

Contra la sentencia de 22 de enero de 1917 y la orden
denegatoria del nuevo juicio de 31 del propio mes, los de-
mandados José Antonio, José María y Luis Ferrer y Angel
A. Vázquez interpusieron recurso de apelación para ante es-
ta Corte Suprema, y para sostenerlo alegan varios errores
que examinaremos por el mismo orden numérico que llevan
en el alegato escrito:

PRIMER ERROR.

La corte erró al desestimar la moción de los demandados por la que solicitaban la especificación y eliminación de ciertos párrafos de la demanda.

En dicha moción solicitaron los demandados José Antonio, José María y Luis Ferrer y Angel A. Vázquez que la corte ordenara al demandante: (a) que en el hecho primero de la demanda enmendada especificara la fecha en que José María Ferrer adquirió de Lázaro Ferrer la finca de 13 cuerdas que se describe en esa alegación, y qué clase de título medió en la transacción, si fué documento privado o escritura pública; (b) que especificara en el hecho segundo de la demanda los nombres de los herederos que a su fallecimiento dejó María de los Angeles Pabón, porque alegándose que hubo una partición y división de herencia entre sus herederos, deben conocer los demandados quiénes fueron esos herederos, debiendo especificarse además con claridad la situación y linderos de las dos cuerdas de terreno adjudicadas a María de los Angeles Ferrer y Pabón, causante del demandante; (c) que también especifique éste la situación y linderos de la cuerda de terreno adjudicada a María de los Angeles Ferrer y Pabón en la división de la herencia de su difunto padre, según se afirma en la alegación quinta de la demanda.

En la misma moción se pidió: (a) que se eliminaran del hecho tercero de la demanda las palabras ''y que en unión de más tierras'' por ser inmateriales, impertinentes y redundantes; (b) que también fuera eliminada en su totalidad la alegación 7ª. de la demanda por ser inmaterial, impertinente y redundante para la acción ejercitada en el pleito y por no afectar a todos los demandados.

La corte procedió con razón derecha al desestimar en todas sus partes la moción de que se trata.

En la demanda alega el demandante corresponderle en propiedad la finca rústica de siete cuerdas que describe, como

perteneciente a su causante María de los Angeles Ferrer y Pabón, y para demostrar esa propiedad le bastaba alegar como alegó que de esas siete cuerdas había adquirido su causante dos cuerdas por herencia materna, 4 por compra a su difunto padre José María Ferrer, y una por herencia paterna. . A los demandados les bastaba para su defensa tener conocimiento de que los terrenos que por herencia materna y paterna había adquirido María de los Angeles Ferrer estaban enclavados en la finca de siete cuerdas que se describe en la demanda, con tanto mayor motivo cuanto que en la misma demanda se describen las cuatro cuerdas que María de los Angeles Ferrer adquirió de su padre y la finca rústica constituída por esas cuatro cuerdas y las dos que adquirió por herencia materna, como también se describe la finca rústica constituída por esas seis cuerdas y la otra cuerda habida por herencia paterna.  La identificación es clara; y no podía quedar duda alguna a los demandados de la propiedad que alegaba ser suya el demandante.

Ni era necesario especificar en el hecho segundo de la demanda los nombres de los herederos de María de los Angeles Pabón, entre quienes fué partida y dividida la herencia de ésta, pues los demandados como partícipes en esa herencia debían tener conocimiento de tal particular, ocurriendo lo propio con el abogado Angel A. Vázquez encargado de la tramitación de la declaratoria de herederos de los consortes José María Ferrer y María de los Angeles Pabón. Pero a mayor abundamiento, todos esos herederos aparecen relacionados en los hechos octavo y noveno de la demanda, quedando así satisfecha la exigencia de los demandados.

En cuanto a las eliminaciones pedidas, habiendo alegado la parte demandante en la alegación tercera de la demanda que su difunta esposa había adquirido de su legítimo padre José María Ferrer por título de compra las cuatro cuerdas de terreno que describe y que a éste le habían sido adjudicadas al fallecimiento de su esposa María de los Angeles Pabón, no holgaba añadir que tal adjudicación le había sido

hecha "en unión de más tierras" para evitar se entendiera que la adjudicación hecha a José María Ferrer se limitó a esas cuatro cuerdas, y en cierto modo para identificar mejor las cuatro cuerdas adquiridas por María de los Angeles Ferrer.

La alegación séptima de la demanda relativa al pleito sobre nulidad del testamento otorgado por María de los Angeles Ferrer y resultado de ese pleito, tiende a dar mayor consistencia al título del demandante cuyos derechos a la herencia de su difunta esposa se derivaban propiamente de dicho testamento, y aunque acaso fuera un anticipo de defensa contra su nulidad tal alegación no perjudicó sustancialmente los derechos de los demandados y por tanto nunca sería un error fundamental que nos llevara por sí solo a la revocación de la sentencia dictada.

### SEGUNDO ERROR.

La corte erró al desestimar las excepciones previas de indebida acumulación de parte demandada, de indebida acumulación de acciones y de que la demanda no aduce hechos suficientes en cuanto al demandado Angel A. Vázquez para determinar una causa de acción.

Esas excepciones fueron opuestas a la demanda por el demandado Angel A. Vázquez alegando como razones de ellas que no tenía interés en el asunto cuando se presentó la demanda original, ni lo tenía al presentarse la demanda enmendada, por haber vendido la finca objeto del pleito al demandado Luis Ferrer; que para la acumulación de varias acciones era necesario que éstas afectaran a todas las partes en el pleito, y de la faz de la demanda resulta claramente que el demandado Angel A. Vázquez no está afectado por las acciones de nulidad de inscripción y declaración de título a que se refieren las diez primeras alegaciones de la demanda, por no haber intervenido en las transacciones a que las mismas se contraen, no habiendo intervenido tampoco los

otros demandados, con excepción de Luis Ferrer, en el contrato de venta entre éste y Vázquez cuya nulidad se pide.

Examinadas en conjunto las alegaciones de la demanda y los fines que mediante ella persigue el demandante, se ve claro que no solamente los herederos de José María Ferrer y María de los Angeles Pabón tienen interés en la nulidad de la inscripción de la finca de 13 cuerdas en cuanto a las 7 cuerdas cuya propiedad reclama el demandante, sino también el demandado Angel A. Vázquez, por derivarse su derecho del de los herederos demandados, teniendo también interés los herederos demandados en la nulidad de la venta hecha por el márshal de la Corte Municipal de Cabo Rojo al demandado Angel A. Vázquez y por éste a Luis Ferrer, cuyas nulidades se solicitan en la demanda. Es aplicable al caso el artículo 63 del Código de Enjuiciamiento Civil que dice:

"Artículo 63.—Cualquier persona podrá ser constituída en demandado siempre que tenga o alegue tener interés en la contienda en oposición al demandante o sea parte indispensable para la completa determinación o arreglo de la cuestión litigiosa."

En virtud del anterior precepto tanto los herederos de José María Ferrer y María de los Angeles Pabón como el abogado Angel A. Vázquez han sido bien traídos al pleito.

"La regla general sobre la materia puede decirse ser que son partes necesarias todas aquellas personas que tienen un interés en el objeto que puede ser afectado por la sentencia. Esta regla se funda en el principio que tiende a impedir subsiguientes litigios y multiplicidad de acciones con la determinación de todos los derechos de todas las partes que puedan o deban ser afectadas por una sentencia." *Wilson* v. *Castro,* 31 Calif. 427.

Y las acciones han sido debidamente acumuladas pues los derechos que transmitió el demandado Angel A. Vázquez al otro demandado Luis Ferrer traen su origen de los derechos de los partícipes en la herencia de José María Ferrer y María de los Angeles Pabón, y anulados estos derechos quedarían también anulados los del demandado Angel A.

Vázquez y consiguientemente los de Luis Ferrer, a no de-
mostrarse el carácter de terceros que incumbe alegar opor-
tunamente a los demandados interesados, sin poder impo-
nerse al demandante el cargo de alegar la negativa de seme-
jante derecho por parte de los demandados a quienes inte-
rese alegarlo como defensa.   Cuando varias acciones están
íntimamente relacionadas entre sí por derivarse unas de otras,
no hay objeción en sostener su acumulación. Lucero v. Vilá,
17 D. P. R. 152.

En cuanto a que la demanda no aduce respecto del de-
mandado Angel A. Vázquez hechos bastantes para deter-
minar una causa de acción, basta la lectura de las alegacio-
nes undécima y duodécima de la demanda, relacionadas con
las anteriores, para llegar a la conclusión de que de ser cier-
tas dichas alegaciones, y por tales debemos tenerlas para de-
cidir la excepción propuesta, dicha excepción es insostenible.

### TERCER ERROR.

La corte erró al reconsiderar a propia moción la orden
en que disponía que el demandante expusiera separadamente
las distintas causas de acción que comprende la demanda.

Los demandados José Antonio, José María y Luis Ferrer
y Angel A. Vázquez presentaron moción a la corte con fe-
cha 16 de noviembre de 1916 en que alegaron que del hecho
primero al décimo de la demanda se ejercitaban por el de-
mandante las acciones de nulidad de inscripción y de otor-
gamiento de escritura contra la sucesión de los consortes Jo-
sé María Ferrer y María de los Angeles Pabón mientras que
los hechos undécimo y duodécimo de la misma demanda en-
trañaban una acción de nulidad de escritura contra Luis Fe-
rrer y Angel A. Vázquez, este último extraño a la sucesión
Ferrer, a pesar de lo cual se habían acumulado varias cau-
sas de acción sin que hubieran sido expuestas separadamente,
por lo que suplicaban se ordenara al demandante que expu-
siera separadamente las distintas causas de acción que ejer-
cita en el pleito.

La corte por orden de 27 de noviembre citado declaró con lugar la anterior moción y ordenó al demandante enmendara su demanda exponiendo separadamente las causas de acción que ejercitaba para lo cual le concedió un término de dos días para radicar dicha demanda enmendada, y posteriormente por orden de 28 de noviembre reconsideró y dejó sin efecto ni valor alguno la del día anterior por entender que después de haberse contestado la demanda era improcedente la moción de los demandados.

Según el artículo 104, inciso 8º., del Código de Enjuiciamiento Civil, el demandante podrá acumular varias acciones en una misma demanda en las condiciones que exige dicho artículo, debiendo las acciones así acumuladas exponerse separadamente; y de acuerdo con dicho artículo, la parte demandada puede exigir que las causas de acción se expongan separadamente por el demandante, pero ese derecho debe ejercitarse por el demandado antes de contestar la demanda, pues de no hacerlo así renuncia el derecho de hacerlo y se somete al juicio en los términos en que ha sido propuesta la demanda.

Los demandados ejercitaron dicho derecho tardíamente y la corte, en uso del poder que le confiere el artículo 7º. del Código de Enjuiciamiento Civil en su apartado 8º., "Para inspeccionar y corregir sus providencias y órdenes con el fin de ajustarlas a la ley y a la justicia", pudo reconsiderar y dejar sin efecto su orden de 27 de noviembre de 1916.

### CUARTO ERROR.

La corte erró al someter a juicio a los demandados a pesar de haber éstos alegado indefensión.

En el mismo día 28 de noviembre de 1916 en que la corte inferior a propia moción reconsideró y dejó sin efecto su orden de 27 de noviembre disponiendo se expusieran separadamente las distintas causas de acción, fué llamado el caso a juicio, y el abogado de los demandados solicitó su suspensión por indefensión, expresándose en los siguientes términos:

"Deseo hacer constar que los demandados no están listos para entrar en juicio y solicito la suspensión por indefensión porque habiéndose notificado a los demandados en el día de ayer, 27 de noviembre de 1916, una orden de la corte por la que se conceden al demandante dos días para enmendar su demanda en el sentido de exponer separadamente las distintas causas de acción que ella comprende, los demandados abandonaron el asunto hasta recibir copia de la nueva demanda, y con ese motivo en el día de hoy no se encuentra aquí ninguno de los testigos con que debía contar el abogado de los demandados y únicamente nos sometemos a juicio por virtud de una orden expresa de la corte, si así la dicta, para no incurrir en el delito de desacato."

El Juez dijo entonces:

"La corte resuelve que aunque dictó una orden ordenando al demandante de exponer las dos causas de acción separadamente en el día de ayer, no dictó ninguna orden suspendiendo la vista señalada para hoy, pero que en vista de la manifestación de que los demandados no están preparados con sus testigos, la corte ordena que se proceda a la práctica de la prueba del demandante, y entonces suspenderá el juicio para otro día, para dar amplia oportunidad a los demandados para preparar su defensa."

En vista de la anterior resolución se procedió a la celebración del juicio y después de haberse practicado las pruebas propuestas por la parte demandante que fueron testifical y documental, sin que la testifical fuera objetada por el fundamento de no haber podido la representación de los demandados repreguntar a los testigos, por parte de esa misma representación declaró como testigo el abogado Angel A. Vázquez, praticándose también a su instancia prueba documental.

Antes de proponer su prueba, la representación de los demandados no solicitó la suspensión del juicio, no obstante la conformidad expresamente manifestada por la corte de suspenderlo para otro día con el fin de dar amplia oportunidad á los demandados para preparar su defensa, y lo que es más, tampoco los demandados solicitaron tal suspensión después de terminada la práctica de sus pruebas.

Bajo los hechos expuestos no pueden quejarse de indefen-

sión los apelantes.   Esa conclusión será robustecida por las razones que expondremos al considerar el noveno motivo del recurso consistente en que la corte cometió error al declarar sin lugar la moción de nuevo juicio.

### QUINTO ERROR.

La corte erró al admitir prueba secundaria para justificar la existencia del documento de partición de los bienes de la fallecida María de los Angeles Pabón e Irizarry.

Ciertamente que la corte admitió a la parte demandante prueba testifical para justificar que se habían realizado las operaciones particionales de los bienes relictos por los esposos María de los Angeles Pabón e Irizarry y José María Ferrer y Pagán.   Pero como en la alegación segunda de la demanda no se afirma que se hubiera otorgado documento de partición de los bienes de la fallecida María de los Angeles Pabón e Irizarry sino que se partieron y dividieron entre sus herederos los bienes que dejara a su fallecimiento, entre ellos la parte que le perteneció en la finca de 13 cuerdas denominada "El Barro", de la cual se adjudicaron dos cuerdas a María de los Angeles Ferrer y Pabón, esposa del demandante, bajo tal alegación era admisible la prueba tendente a comprobar la partición y división de los bienes relictos por María de los Angeles Pabón e Irizarry, aunque esas operaciones no constaran en documento público o privado.

### SEXTO ERROR.

La corte erró al admitir en prueba el testamento otorgado por María de los Angeles Ferrer.

La alegación de dicho error es frívola, pues en ese testamento María de los Angeles Ferrer nombró heredero a su esposo el demandante, y por tanto de ese documento se deriva el derecho que pueda tener el demandante a los bienes de su difunta esposa, por más que no haya podido adquirir más derechos que los que ella hubiera tenido sobre las 7 cuerdas de terreno de que se trata.

En dicho testamento otorgado con fecha 15 de agosto de 1910, María de los Angeles Ferrer instituyó por su único y universal heredero a su esposo José Federico Carlo Zapata, y en la cláusula segunda del mismo declara:

"Que todo su caudal hereditario lo constituye un predio rústico radicado en el barrio Llanos Tuna, el que hubo por herencia de sus padres. Que después de celebrado su matrimonio su esposo fabricó en el mencionado predio una casa con su peculio propio y es la que actualmente viven. Consta dicha finca de 7 cuerdas de terreno llano y sobrealto, dedicada a cañas de azúcar, y colinda al norte con terrenos de Amparo Rivera; al este, con otros de José María Padilla; al sur, con otros de Luis Ferrer y con el camino que divide los barrios de Llanos Tuna y Llanos Costa; y al oeste, con Pedro López y José Antonio Ferrer y Amparo Rivera."

Esa es la misma finca de 7 cuerdas descrita en la alegación quinta de la demanda.

### SEXTO ERROR DUPLICADO.

La corte erró al admitir en prueba dos certificaciones del Tesorero de Puerto Rico que no se relacionan con la finca objeto del pleito.

La primera de dichas certificaciones que designaremos con la letra A, dice así:

"El Tesorero de Puerto Rico interino que suscribe, certifica que de los archivos de este Departamento consta que don José M. Ferrer Pagán declaró a los efectos de la contribución en el año económico 1902–03 una finca rústica en el barrio Llanos Tuna del municipio de Cabo Rojo, compuesta de 12 cuerdas que fueron valoradas en $92, y conteniendo una casa valorada en $35, en total $127. La mencionada propiedad fué eliminada del reparto contributivo para el año económico 1905–06 y siguientes, por la razón, según consta en declaración suscrita por don Fernando Ferrer en 30 de enero de 1915, de que la propiedad fué distribuída por venta hecha por el Sr. Ferrer Pagán antes de su fallecimiento a los Sres. Luis Ferrer, Germán Ramírez, Gregorio Ascencio, Angel Méndez, Amparo Rivera y José Antonio Ferrer. En el presente año económico 1916–17 no figura don José María Ferrer y Pagán como contribuyente en el municipio de Cabo Rojo."

La otra certificación, que marcaremos con la letra B, dice así:

"El Tesorero interino de Puerto Rico que suscribe certifica: que según consta de los antecedentes que existen en este Departamento correspondiente a la valoración de la propiedad del año económico 1902–03, María de los Angeles Ferrer y Pabón ha declarado poseer en el barrio Llanos Tuna del término municipal de Cabo Rojo las siguientes propiedades: Predio rústico compuesto de seis cuerdas de terreno valoradas en $80 y propiedad personal por valor de $51; total $131, a las que se les asigna $1.46 por toda contribución al año, según recibo No. 512 asst. 512 del referido año económico de 1902–03."

A la admisión de la certificación letra A se opuso excepción por el fundamento de que se refiere a una finca de 12 cuerdas de terreno declarada en el año 1902 para los actos contributivos y valorada en $92 que no tiene pertinencia con la finca de 7 cuerdas objeto del pleito. La admisión de la segunda certificación letra B fué excepcionada por impertinente, toda vez que José María Ferrer, causante de María de los Angeles Ferrer, falleció en el año 1903 y esa certificación se refiere al año 1902.

Aunque no vemos que la primera certificación guarde relación con la finca de 7 cuerdas que se describe en la demanda, pues se refiere a una finca que antes de su fallecimiento fué vendida por José María Ferrer Pagán a varias personas entre las cuales no figura la causante del demandante María de los Angeles Ferrer y Pabón, la admisión de dicha certificación no daría lugar por sí sola a la revocación de la sentencia, por no habérsenos demostrado que causara perjuicio a los demandados.

En cuanto a la certificación letra B, la estimamos pertinente a la cuestión en *issue*, o sea, a la propiedad de la finca de 7 cuerdas de María de los Angeles Ferrer, toda vez que aunque la certificación se refiere a una finca de 6 cuerdas y la finca descrita en la demanda es de 7 cuerdas, la diferencia de una cuerda se explica teniendo en cuenta que la decla-

ración fué hecha para el año económico 1902–03, cuando aun no había fallecido José María Ferrer y Pagán de quien hubo María de los Angeles Ferrer la otra cuerda por derecho hereditario, la que por tanto no podía aun declarar como suya para los fines contributivos.

### SÉPTIMO ERROR.

La corte erró al admitir en evidencia documentos privados en que no intervino ninguno de los demandados opositores.

Esos documentos son cuatro, de los cuales el primero, que marcaremos con la letra C, dice así:

"*Letra C.*—He recibido de mi legítima hija doña María de los Angeles Ferrer y Pabón la suma de ciento cuarenta pesos moneda corriente importe de cuatro cuerdas de terreno, media cuerda plantada de chamalucos y el resto a pasto, que de mi propiedad le he vendido, radicado dicho terreno en el barrio de Llanos Tuna. Linda por el norte con don Germán Ramírez, por el sur con el vendedor y la compradora, por el este con don José María Padilla y por el oeste con el vendedor, que unida esta porción de terreno a dos cuerdas que hubo por herencia componen seis cuerdas. Dicho terreno lo hube por compra a mi legítimo padre don Lázaro Ferrer y con este título legal se lo he vendido libre de todo gravamen, con sus entradas, salidas, usos, costumbres, servidumbres y regalías que le corresponden y puedan corresponderle de hecho y de derecho, por la suma ya manifestada que confieso haber recibido satisfactoriamente. A la evicción, seguridad y saneamiento de esta venta obligo mis bienes presentes con sumisión y renunciación de leyes, fueros y derechos de mi favor y lo general en forma. Y para que conste su legítima adquisición le doy el presente en el barrio de Llanos Tuna, jurisdicción del pueblo de Cabo Rojo, a los seis días del mes de diciembre, año de mil novecientos. Por imposibilidad de mi señor padre, don José María Ferrer, Fernando Ferrer.—Testigo, José Federico Carlo.—Testigo, Gregorio Lozada.—Testigo, Ubaldino Ferrer."

Los demandados, según reza el pliego de excepciones, se opusieron a la admisión de ese documento porque no está suscrito por el que aparece como vendedor, que es José María Ferrer y Pagán; porque en él no aparece la firma de

la compradora María de los Angeles Ferrer, si es que la venta se hizo; porque según declaró el testigo Fernando Ferrer el dinero no fué recibido sino que José María Ferrer le dijo que hiciera ese documento sin que Fernando Ferrer nada supiera de la venta, y porque para que esa venta pueda perjudicar a Angel A. Vázquez que es uno de los demandados tenía que ser suscrita ante notario por el que la otorgó y por el que la aceptó.

Los otros tres documentos, que marcaremos con las letras D, E, F, están concebidos en los siguientes términos: ·

"*Letra D.*—He recibido de mi convecino don Germán Ramírez y Ferrer la cantidad de once 'pesos moneda corriente, importe de media cuerda y la duodécima parte de cuerda de terreno que le he vendido, radicado en el barrio de Llanos Tuna de este término municipal y demarcado bajo las colindancias siguientes: por el norte, con tierras del comprador; por el sur, con tierras de Angel Méndez; por el este con el comprador y por el oeste con  tierras de José Ma. Padilla.  Dicho terreno corresponde a mis legítimos hijos Indalecio, Jorge Benjamín, Lisandro y Arsenio, que lo hubieron por herencia de su difunto abuelo, don José María Ferrer (Q. E. P. D.) y del cual soy asegurador, declarando que la indicada cantidad de once pesos, que pertenece a mis referidos hijos, queda depositada en mi poder durante la menor edad de éstos, menos lo que corresponde a Indalecio cuya porción le será entregada por tener éste su competente edad.  Declaro que le he vendido dicho terreno al supradicho don Germán Ramírez y Ferrer libre de todo gravamen.  Asimismo declaro que la suma recibida es el justo precio del terreno, que no vale más; pero, en caso contrario, de la demasía, en poco o mucha cantidad, hago gracia al comprador, en quien cedo, renuncio y traspaso el derecho de propiedad, dominio y señorío que en dicho terreno tenían mis citados hijos, y se lo trasmito a su nuevo dueño para que, como legítimo propietario disponga de él a su voluntad y sin dependencia alguna.  Y para que conste su legítima adquisición, le doy el presente en Llanos Tuna de Cabo Rojo a los veinte y tres días del mes de enero de mil novecientos cuatro.—Delfín Carlos Zapata.—Indalecio Carlos.—Jorge Benjamín Carlos.—Testigo, Ubaldino Ferrer.—Testigo, José Antonio Ferrer.—Testigo, Delfín Perez.

"*Letra E.*—Yo, Amparo Rivera y Ferrer, mayor de edad, casada con Tomás Saldaña, vecina de Mayagüez, ante los testigos que suscriben declaro: que he vendido de mi propiedad a don Pedro López

vecino del barrio de Llanos Tuna de Cabo Rojo, dos cuerdas y media de terreno de superficie llana y alta, a cañas dulces y frutos menores, radicadas en el barrio de Llanos Tuna, del término municipal de Cabo Rojo; por la cantidad de cien dollars los cuales he recibido a mi entera satisfacción. Linda dicho terreno por el norte y oeste, con tierras de don Germán Ramírez; por el sur, con otras tierras de la sucesión de María de los Angeles Ferrer y por el este con tierras de don Valentín Martínez y de don Nicanor Ramírez. Hube el citado terreno por herencia de mis difuntos abuelos don José Ma. Ferrer y doña María de los Angeles Pabón, y se lo he vendido libre de todo gravamen, quedando obligado al saneamiento de esta venta con todos mis bienes habidos y por haber. Autorizo a mi comprador para que a su nombre promueva expediente posesorio o de dominio del terreno que le he vendido cuando él lo estime conveniente, y para que haga constar su legítima adquisición, le doy el presente en Mayagüez, a los veinte y dos días del mes de marzo, año mil novecientos trece; al oeste colinda con don José A. Ferrer.—Vale.—Amparo Rivera de Saldaña.—Soy testigo, Fernando Ferrer Pabón.—José Antonio Ferrer.—José F. Carlo.

"*Letra F.*—Hemos recibido de don Germán Ramírez la cantidad de veinte y dos pesos moneda americana, importe de siete cuadros y un tercio de otro de terreno de superficie alta pedregosa y a pasto, radicado en el barrio de Llanos Tuna, término municipal de Cabo Rojo que de nuestra propiedad le hemos vendido. Linda dicho terreno por el norte, este y oeste, con tierras de nuestro comprador y por el sur con los de Ramón y Amparo Rivera, dicho terreno lo hubimos por herencia de nuestro difunto padre, don José Ma. Ferrer, y con este título legal se lo hemos vendido libre de todo gravamen, con sus entradas, salidas, usos, costumbres, servidumbres y regalías que le corresponden y puedan corresponderle de hecho y de derecho, por la suma ya manifestada que confesamos recibida satisfactoriamente. A la evicción, seguridad y saneamiento de esta venta obligamos nuestros bienes presentes y futuros, con sumisión y renunciación de leyes fueros y derechos de nuestro favor y la general en forma. Y para que conste su legítima adquisición le damos el presente en el barrio de Llanos Tuna, jurisdicción del pueblo de Cabo Rojo, Puerto Rico, E. U. de América, a doce de enero de mil novecientos cuatro.—Fernando Ferrer.—Luis Ferrer.—Testigo, Emilio A. Segarra.—Testigo, Franco. Irizarry.—Testigo, Ubaldino Lozada.''

Los demandados se opusieron a la admisión de los documentos letras D, E, F, por el fundamento de que no guardan

relación con el objeto del pleito y son documentos privados que no perjudican a tercero.

Las excepciones opuestas a la admisión de los documentos C, D, E y F, que se dejan transcritos, no se sostienen por las razones en que se fundan, pues en cuanto al documento C aunque no lo firma el vendedor José María Ferrer, por imposibilidad de éste lo hace a su nombre su hijo Fernando Ferrer, y no era necesaria la firma de la compradora, máxime constando de las pruebas que ella había aceptado el contrato y tomado posesión del terreno vendido, siendo inmaterial al caso que Fernando Ferrer supiera o no que el precio de la venta hubiera sido recibido por su padre.

Tampoco era necesario que el documento fuera suscrito ante notario por el que lo otorgó y por el que lo aceptó para que perjudicara a Angel A. Vázquez, pues no hay precepto alguno en el Código Civil que por modo exclusivo exija semejante requisito en los documentos privados para que éstos puedan perjudicar a tercero.

Por lo que atañe a los otros tres documentos, D, E, F, no puede argüirse, contra su admisión, que no guardan relación con el objeto del pleito pues tienden a demostrar que fueron practicadas las operaciones particionales de los bienes de los consortes José María Ferrer y María de los Angeles Pabón mediante prueba de que terrenos adquiridos en esas particiones por herederos de los expresados consortes habían sido vendidos a terceras personas. Por más que esos documentos sean privados, no puede afirmarse en absoluto que carezcan de condiciones para perjudicar a tercero.

La eficacia y alcance de los cuatro documentos a que nos referimos podrían discutirse al apreciarse el mérito probatorio de los mismos.

### OCTAVO ERROR.

La corte erró en la apreciación de la prueba y al dictar sentencia declarando con lugar la demanda.

La corte inferior llegó al convencimiento de que el de-

mandante es el único dueño, a título de herencia testada de su difunta esposa María de los Angeles Ferrer, de la finca de 7 cuerdas descrita en la demanda, por haberla adquirido María de los Angeles Ferrer, dos cuerdas en las operaciones particionales practicadas a la muerte de su difunta madre María de los Angeles Pabón, cuatro cuerdas por compra a su padre José María Ferrer, y la otra cuerda en las operaciones particionales de los bienes de su referido padre, habiendo estado en posesión de las mismas desde las fechas de su adquisición hasta que murió, de cuyos hechos tenían conocimiento pleno los demandados todos incluso el demandado Angel A. Vázquez, quien en calidad de abogado venía representando a los codemandados desde el mes de febrero de 1911.

La anterior conclusión se sostiene por las declaraciones de los herederos de José María Ferrer y María de los Angeles Pabón que han declarado en el presente juicio, a saber, Fernando Ferrer, José María Ferrer, Luis Ferrer, Delfín Carlo Zapata, viudo de la heredera difunta Dolores Ferrer, Primitivo Ferrer, hijo del heredero difunto Ubaldino Ferrer; y por las de los testigos José Federico Carlo Zapata, José Benet, Alfredo Carlo y Pedro López Carlo. Hay además la circunstancia de que los demandados Indalecio y Lisandro Carlo y Ferrer, Ramón María Rivera y Ferrer, Primitivo María Jesús y Concepción Ferrer y Toro, se allanaron a la demanda por entender ser cierto lo que en la misma se alega. Y la prueba documental consistente en la certificación letra B expedida por Tesorería y en los documentos privados C, D, E, F, que se dejan transcritos, viene a corroborar la prueba testifical relativa a que las operaciones particionales de los bienes de los consortes José María Ferrer y María de los Angeles Pabón se llevaron a efecto por los interesados. La venta de lo adjudicado no puede existir sin la adjudicación previa.

Y la apreciación de la corte inferior de que el abogado Angel A. Vázquez tenía conocimiento de que el demandante

José Federico Carlo Zapata era dueño de la finca de 7 cuer-
das de que se trata no es errónea pues se sostiene por el
hecho de que el demandado Vázquez entró en relaciones pro-
fesionales con el demandante Federico Carlo Zapata para
que éste pudiera legalizar e inscribir el título a las siete cuer-
das de terreno que había adquirido por testamento y por las
manifestaciones hechas por Vázquez a Zapata en el sentido
de que no podía ser desahuciado de la finca porque era suya
y la había heredado de su esposa, habiendo levantado con
peculio propio la casa que en ella existía.

La corte expresa además haber llegado al convencimiento
de que el pleito seguido ante la Corte Municipal de Maya-
güez por Angel A. Vázquez contra los herederos, Ferrer Pa-
bón en cobro de honorarios es simulado y llevado con el pro-
pósito de obtener una sentencia convenida ya con varios de
los demandados y a espaldas del heredero José Federico Car-
lo, que sirviera de fundamento para embargar las 7 cuerdas
de terreno referidas.   La parte apelante impugna tal apre-
ciación de pruebas, pero no juzgamos necesario considerar
el caso bajo semejante aspecto, pues si la finca de 7 cuerdas
era de la propiedad del demandante por haberla adquirido
de su esposa María de los Angeles Ferrer a título de herencia
habiéndola adquirido a su vez María de los Angeles parte por
título de compraventa a su difunto padre y parte por herencia
de éste y de su madre María de los Angeles Pabón, de todo lo
cual tenían conocimiento los herederos demandados y el code-
mandado Angel A. Vázquez, es forzoso llegar a la conclusión
de que la venta de las 7 cuerdas en pública subasta al deman-
dado Vázquez es nula y consiguientemente nula también la
venta hecha por Vázquez al demandado Ferrer, adoleciendo
igualmente de nulidad las inscripciones de esos contratos en el
registro de la propiedad.   El demandado Angel A. Vázquez
no puede acogerse a los beneficios que la ley concede a los ter-
ceros, pues no tiene tal carácter, sabiendo como sabía que la

finca que remató era de la propiedad del demandante. *Ninlliat* v. *Suriñac et al.,* 24 D. P. R. 67.

No se levantó en la corte inferior cuestión alguna referente a la validez o legalidad de las particiones de herencia, pues los demandados se limitaron a negar específicamente este hecho pero sin aducir materia nueva o defensa esencial alguna, ni aún contrademanda que pusiera ante la corte y las partes las condiciones jurídicas de los herederos ante dichas particiones. Esa cuestión de nulidad ha sido tardíamente levantada y no merece ser considerada.

### NOVENO ERROR.

La corte erró al declarar sin lugar la moción de nuevo juicio.

Los demandados José Antonio, José María y Luis Ferrer y Angel A. Vázquez solicitaron que se les concediera un nuevo juicio alegando para ello los siguientes motivos:

1°. Irregularidad en la orden de la corte reconsiderando la que había dictado para que el demandante expusiera separadamente las distintas causas de acción que comprende la demanda.

2°. Accidente o sorpresa que la ordinaria prudencia no pudo prevenir.

3°. Ser la sentencia contraria a la ley.

En corroboración de los dos primeros motivos fué presentado un *affidavit* jurado por el abogado Angel A. Vázquez en el cual se alega: que estando señalado el juicio del caso para el día 28 de noviembre de 1916 la corte a moción de los demandados dictó orden en 27 del mismo mes para que el demandante expusiera separadamente las distintas causas de acción que comprende la demanda, señalándole para ello dos días que habían de vencer el 29 de noviembre; que por virtud de esa orden de 27 de noviembre el abogado de los demandados descuidó y abandonó en absoluto el prepararse para el juicio y avisó al demandado José Antonio Ferrer, residente en uno de los barrios de Cabo Rojo que no viniera

al juicio, porque entendía el abogado que ya no existía demanda ni contestación en el récord y, por tanto, el juicio había quedado suspendido por propio imperio de la orden de 27 de noviembre de 1916; que en 28 de noviembre de 1916 el abogado concurrió a la corte para atender a otros asuntos distintos y oyó en corte abierta de labios del juez que a propia moción reconsideraba la orden de 27 de noviembre de 1916, lo cual constituyó una gran sorpresa para el abogado que hasta ese momento no había recibido noticia alguna de que la corte iba a reconsiderar dicha orden ni siquiera había llevado consigo los papeles del asunto; que en vista de lo resuelto por la corte el abogado tomó excepción y solicitó la suspensión del juicio por indefensión por no haber preparado su prueba y manifestó asimismo que únicamente entraría a juicio por virtud de orden de la corte para no incurrir en desacato; que la corte ordenó la celebración del juicio inmediatamente, haciendo constar que ya que el abogado se encontraba en esas condiciones de indefensión le daría todas las oportunidades para practicar su prueba en otra sesión; que entre los demandados que han contestado la demanda se encuentra José Antonio Ferrer, hermano mayor de los otros demandados y persona que mejor que ninguna otra está perfectamente enterada de todos los pormenores del caso, siendo su declaración decisiva para la defensa de los demandados y en la creencia de que el juicio no se celebraría, no hizo concurrir al acto de la vista a José Antonio Ferrer para que éste declarara personalmente sobre los hechos de la defensa y le suministrara los datos necesarios con el fin de repreguntar a los testigos según fueran declarando y que la causa de la defensa de los demandados es suficiente y meritoria y si se le concediera un nuevo juicio el resultado sería completamente distinto y favorable a los demandados, quienes tendrían entonces una buena oportunidad de aportar todas sus pruebas y de refutar inmediatamente lo que declararan los testigos del demandante.

Están equivocados los apelantes al dar por sentado que

estaban obligados a ir a juicio o de lo contrario incurrirían en desacato.

Atendidos los términos en que fué redactada la orden de la corte de 28 de noviembre de 1916, inserta al impugnar el cuarto error que sirve de fundamento al recurso, los demandados, después de practicadas las pruebas del demandante pudieron pedir la suspensión del juicio para que declarara el testigo José Antonio Ferrer que según ellos era la persona que mejor que ninguna otra estaba enterada perfectamente de todos los pormenores del caso hasta el punto de ser su declaración decisiva para la defensa de los demandados. No lo hicieron así y renunciaron por tanto a su declaración. Pero los demandados insisten en que por no estar presente ese testigo cuando declararon los testigos del demandante se vieron impedidos de repreguntar a éstos por ser José Antonio Ferrer la persona más competente para indicar el modo en que habían de llevarse a cabo las repreguntas y a esa afirmación de los demandados contestamos que ellos estaban en el deber de aclarar qué hechos adicionales pudieron haber producido en prueba por vía de repregunta o qué impugnaciones a la credibilidad de los testigos del demandante pudieron haber hecho, y ante semejante omisión no aparece cuál sea el perjuicio que hayan sufrido los apelantes. El supuesto error en su totalidad gira principalmente sobre la falta de oportunidad para repreguntar y debió demostrarse que de los autos aparece el perjuicio sufrido. 4 C. J. par. 2923, p. 947.

Para sostener que la sentencia es contraria a la ley, exponen los demandados que el título del demandante a la finca por él reclamada proviene de dos particiones de herencia efectuadas privadamente entre los herederos, y habiendo sido negadas ambas particiones por los demandados comparecientes, el demandante presentó en relación con la prueba testifical el récord del caso civil No. 3131 iniciado por José María Ferrer Pabón en 1911 para la declaración de los herederos abintestado de María de los Angeles Pabón y José María Ferrer Pagán, de cuyo récord resulta que en la época

en que las particiones se realizaron los herederos Indalecio, nacido el 6 de enero de 1878, Jorge Benjamín, nacido el 23 de abril de 1885, Lisandro, nacido el 1º. de octubre de 1887 y Delfín Arsenio Carlo, nacido el 1º. de agosto de 1892, y Ramón María, nacido el 15 de septiembre de 1883 y Amparo Rivera, nacida en 22 de agosto de 1888, eran menores de edad, sin que el demandante probara que las particiones fueran aprobadas judicialmente, siendo por tanto nulas e inexistentes dichas particiones.

Ya hemos dicho anteriormente, al impugnar el 8º. error en que se funda el recurso, que en la corte inferior no se levantó cuestión alguna relativa a la validez o ilegalidad de las particiones de herencia pues los demandados se limitaron a negarlas específicamente sin aducir materia nueva o defensa esencial, ni aún contrademanda que pusiera ante la corte y las partes las condiciones jurídicas de los herederos ante esas particiones, habiendo sido por tanto tardíamente levantada la cuestión de nulidad.  Ahora agregamos que el récord del caso civil No. 3131 sobre declaración de herederos de los consortes José María Ferrer Pagán y María de los Angeles Pabón fué utilizado como prueba para justificar el carácter de heredero de los demandados, pero no para justificar la edad que tuvieran al verificarse las particiones, por más que en dicho récord aparecen las partidas de nacimiento de los demandantes que se relacionan en el escrito de exposición del caso.

De todos modos, teniendo en cuenta las fechas en que nacieron los menores expresados que son las mismas anteriormente indicadas, resulta que todos ellos habían llegado a la mayoría de edad en 9 de mayo de 1916 en que fué radicada la demanda enmendada.  Ellos no han alegado la nulidad de las particiones por la razón de que fueran menores de edad en las fechas en que fueron practicadas y lejos de ello por lo que toca a Indalecio y Lisandro Carlo y Ferrer y Ramón María Rivera y Ferrer, se allanaron por modo expreso a la

demanda, habiendo además la circunstancia de que Indalecio y Jorge Benjamín Carlo Ferrer y Amparo Rivera Ferrer según los documentos que dejamos transcritos al tratar del séptimo error han vendido terrenos que les fueron adjudicados, viniendo a convalidar de ese modo las particiones hechas y quedando así impedidos de impugnarlas. Véase el caso de *Díaz et al.,* v. *Balseiro & Giorgetti et al.,* decidido en marzo 10, 1919, (pág. 141).

### DÉCIMO ERROR.

La corte erró al negarse a admitir la contestación enmendada que presentó el demandado Angel A. Vázquez para conformar sus alegaciones con la prueba presentada y admitida en el juicio.

El demandado Angel A. Vázquez mucho tiempo después de celebrado el juicio, o sea en 20 de enero de 1917, presentó a la corte una moción para que le admitiera un proyecto de contestación enmendado que acompañaba, y con fecha 10 de febrero siguiente la corte la resolvió en los siguientes términos:

"Hoy 10 de febrero de 1917 compareció el demandado Angel A. Vázquez en su propia representación y la parte demandante por su abogado Sr. José Benet. Dicho demandado solicitó oralmente que la corte resolviera la moción de fecha 20 de enero de 1917 sobre permiso para enmendar la contestación en el sentido de conformar sus alegaciones con la prueba presentada por el demandante. La corte, después de oir los argumentos orales de los letrados concurrentes, desestima la moción del demandado y en su consecuencia deniega permitir enmendar su contestación."

Alega la parte apelante para sostener el anterior error que como en el juicio se probó que en 28 de agosto de 1899 y 8 de noviembre de 1903 fallecieron respectivamente abintestato María de los Angeles Pabón y José María Ferrer Pagán y que se practicaron las operaciones particionales de sus bienes sin haberse obtenido previamente la declaratoria de herederos de dichos causantes, sin que tales particiones fueran pre-

sentadas a la aprobación judicial, habiéndose adjudicado además a Luis Ferrer una porción de terreno de tres cuerdas para pago de gastos de enfermedad, velorio y entierro de José María Ferrer Pagán sin previa autorización judicial no obstante haber menores de edad, trató de conformar las alegaciones con la prueba practicada mediante enmienda que contuviera todos esos hechos, debiendo por tanto la corte haber ejercitado la discreción que le conceden los artículos 136 y 137 del Código de Enjuiciamiento Civil en relación con el 140 y permitir la enmienda solicitada.

No vemos que la corte abusara de su poder discrecional al negar la enmienda solicitada.

Por las razones expuestas es de confirmarse la sentencia y orden, apeladas.

> *Confirmada la sentencia y la orden denegatoria de nuevo juicio.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.